In the Matter of R. C. SANDERS TECH-
NOLOGY SYSTEMS, INC., Debtor.

Bankruptcy No. 80–251.

United States Bankruptcy Court,
D. New Hampshire.

Feb. 11, 1982.

Stroock, Stroock & Lavan, New York City, Hale & Dorr, Boston, Mass., for debtor.

Reimer & Braunstein, Boston, Mass., for First Nat. Bank of Boston.

Craig & Macauley, Boston, Mass., for State Street Bank & Trust Co.

## ORDER

JOSEPH J. BETLEY, Bankruptcy Judge.

On May 5, 1980, R. C. Sanders Technology Systems, Inc. of Amherst, New Hampshire, a corporation organized in 1975 to develop, manufacture and market electronic products, filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. The "Debtor" was continued in possession of its property and was authorized to operate and manage its business.

By order dated August 27, 1980, the court authorized the retention of Stroock and Stroock and Lavan of New York City as general counsel *nunc pro tunc* under a general retainer to represent the "Debtor" in the within Chapter 11 proceeding. To be assured of payment of its services up to a total of $150,000.00, Venturtech Capital, Inc. ("Venturtech") and Charles M. Brennan shareholders of the debtor and the latter a director, agreed to pay legal fees of Stroock and Stroock and Lavan for services rendered to the debtor conditioned on the following:

> (a) To the extent allowances are granted in these proceedings and paid by the debtor-in-possession, such amounts shall be repaid to the shareholders (by Stroock) if fees have been paid, or set-off against the obligations of the shareholders to pay such legal fees if they have not already paid them, provided that such repayments and set-offs shall not reduce the total obligations of the share holder; and

(b) In consideration of the undertaking by such shareholders to pay said legal fees, they be granted the rights respecting new shares, which may be issued and sold by the debtor, set forth in the (August 8, 1980) agreement.

In accordance with the terms of the August 8, 1980 agreement, "Stroock" rendered periodic bills to the Debtor for legal services which were forwarded to and paid by "Venturtech". The total amount that "Stroock" billed Debtor was $115,262.00 for legal fees and $3016.40 for disbursements for the period of May 12, 1980—December 3, 1980. It has received from "Venturtech" payments on account totalling $69,958.25 leaving a balance of $48,320.25 due; however, "Stroock's" "summary of attorney time billing rates and total fee Exhibit B" reflects a grand total of 997.4 hours and a total fee of $120,262.10. The hourly rate billed varied from $76.00 per hour to $125.00 per hour for "Associates" and $125.00 per hour to $185.00 per hour for "Partners". The "Partners" ran-up 529.6 hours for a total of $76,941.00 of the total fee.

At the request of the Debtor, "Stroock" ceased acting as general counsel to the Debtor the latter part of November 1980 and on December 1, 1980 "Debtor" filed an application seeking authorization to retain Hale and Dorr, Esqs. of Boston, Mass. as general counsel and by an order dated December 15, 1980, the Court approved the application and further provided as follows:

"That no attorney or other professional person retained by the Debtor and approved by this Court or any attorney or professional person retained by the unsecured creditors' committee shall receive any compensation either by way of fees or reimbursement of out-of-pocket disbursements except upon application to and approval by the Court.

That no payments to attorneys or professional persons retained either by the Debtor or unsecured creditors' committee shall be paid by the Debtor or any other person who will acquire any property or shares of the Debtor under, or prior to confirmation of a Proposed Plan or Reorganization until such time as this Court approves the application by the attorney or professional person for such payment and determines the extent to which any such professional person will be entitled to payment from any third party including Venturtech Capital, Inc."

Hale and Dorr filed an itemized bill for legal services rendered to debtor indicating 1598.7 hours of service and a total fee of $190,000.00 adjusted to $186,000.00 and expenses of $4911.13 for the period of November 14, 1980 through March 26, 1981; however, the narrative of services (Schedule A) reflects 1585.7 hours and a total fee of $171,118.00. The hourly rate billed varied from $60.00 to $65.00 per hour for "Associates", $85.00–$95.00 per hour for "Junior Partners" and $110.00 to $175.00 per hour for "Senior Partners." The "Senior Partners" put in 905.8 hours for a total of $127,088.00 of the total bill.

"Stroock and Stroock and Lavan" were general counsel for the "debtor" from May 12, 1980 through November 14, 1980 while the "debtor" had been in Chapter 11 a period of six (6) months and together with its consultants Wheeler Curry and Associates ("Wheeler and Curry") no plan of reorganization had been prepared, negotiated or filed and no new "capital venture capital" was in place. The latter is a usual prerequisite to a successful reorganization of a debtor suffering from a "cash flow" problem. The only hope of "Venturtech" and "Brennan", both stockholders, to gain an equity position in the Debtor company was to agree to advance money to "Stroock" and attempt to protect their capital investment.

Hale and Dorr, Esqs. were general counsel for the debtor, from middle of November 1980 through March 1981, while "debtor" had been in Chapter 11 succeeding "Stroock" as general counsel. During the four month period, counsel finalized settlements with the banks—State Street Bank and Trust, Boston, Mass. reduced its claim from $590,000.00 to approximately $409,000.00 in exchange for a cash payment due on the effective date of the "Plan" and First National Bank of Boston agreed to have its claim

paid over the course of one year with a $50,000.00 payment on the effective date of the "Plan". The unsecured creditors, the orphans of the reorganization, were to receive 10% of stock ownership of the reorganized company which stock was not to be diluted by agreements with other creditors and interests.

Administration of the bankruptcy law for most of its history has been the operation of an economic funeral parlor. Those who failed in their business affairs brought the remains to the bankruptcy court for as peaceful a burial as possible. Of recent years an annex has been built to this funeral parlor because many of the business bodies brought in have been found to hold some breath of life, which, out of proper social and human considerations demands that such life be revived, if possible. This annex has grown into an economic hospital with many operating rooms and wards. In one wing, large corporations are operated upon. In another, small businesses are treated. In another, sick municipalities are given financial oxygen, and so on down the corridors of the "Bankruptcy Clinic Building". In one of the wards we treat budgetary problems of individuals with regular incomes. The charter under which this hospital operates is open to all. Certainly, businessmen and corporations, be they private or municipal, have no patent on financial difficulties, since there are many individuals with regular income who have the same kind of difficulties and need the same kind of help.

■ The 1978 Reform Act specifically provides that compensation for attorneys shall be based on the cost of comparable services other than in a case under this title (11 U.S.C., Sec. 330(a)(1)). This, in the opinion of the court, is a point of reference and not a controlling determinant of what should be allowed in bankruptcy cases.

■ Bankruptcy estates are to be administered as economically as possible and at the lower end of the spectrum of reasonableness. There is inherent a "public interest", that must be considered in awarding fees. The rates for similar services in private employment, particularly the fees pre-vailing in the area or district involved, is one element, among others, in that balance. The test of reasonableness and the aim of economy of administration are always the prime concern of the court in determining the amount to be allowed counsel, accountants, and other professionals retained in the liquidation of bankrupt estates or reorganization cases where the plan of arrangement is finally confirmed. In determining the value of these services, the court considers the time spent, the intricacy of the problems involved, the size of the estate, the opposition met, and the results achieved. The court may consider its own knowledge and 36 years of experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to their value. What is reasonable is a question of fact and there is no precise measure of reasonableness.

■ In the court's opinion, there was nothing in these proceedings that would call for extraordinary know-how in representing "Sanders" by either legal firm and therefore applying the usual rate in this area for legal services in Chapter 11 arrangements of $75.00–$100.00 per hour, the hourly charges in excess of $100.00 by either firm are found unreasonable and the hourly fees of both firms are reduced accordingly, and the agreement of "Venturtech and Brennan" to pay "Stroock" the full amount of its bill is determined by the Court as of no legal effect. "Venturtech and Brennan" are entitled to repayment of any amount they advanced to "Stroock" for legal fees and expenses either from "Stroock" or directly from the "Debtor" who in turn is allowed a credit for any amount repaid to "Venturtech and Brennan" as against the allowed fee and expenses to "Stroock".

On the basis of the foregoing, it is ordered that the Debtor pay:

1. Stroock and Stroock and Lavan, Esqs.
   61 Broadway, New York, N. Y. 10006

| | |
|---|---|
| Fees requested as per "Summary – Exhibit B" | $12,262.10 |
| Disallowed charges over $100.00 per hour | 25,745.70 |
| Amount of total allowed fees | $ 94,516.40 |
| Amount of expenses allowed | 3,016.40 |
| Total allowed fees and expenses | $ 97,532.80 |

2. Hale and Dorr, Esqs.
   60 State St., Boston, Mass. 02109
   Fees requested as per "Narrative of

| | |
|---|---|
| services in Schedule A" | $171,118.00 |
| Disallowed charges over $100.00 per hour | 36,508.00 |
| Amount of total allowed fees | $134,610.00 |
| Amount of expenses allowed | 4,911.13 |
| Total allowed fees and expenses | $139,521.13 |

The First National Bank of Boston was a secured creditor, holding a first mortgage of $250,000.00 on all of the "Debtor's" assets valued in excess of $500,000.00 and State Street Bank and Trust Company of Boston, Mass. held the second mortgage in the amount of $590,000.00 on the "Debtor's" assets. "F.N.B." was more than adequately protected and would appear to require minimal legal assistance in connection with collecting its debt.

Riemer and Braunstein, Esqs. of Boston, Mass., counsel for "F.N.B." filed an itemized bill for services totalling $19,177.00 and expenses of $3034.24 for the period May 15, 1980 through March 26, 1981 reflecting 211.9 hours of services of "Partners" and "Associates" and 48 hours of services of "Paralegals". The hourly rate billed varied from $30.00 per hour for "Paralegals" to $50.00–$85.00 per hour for "Associates", and $100.00–$125.00 per hour for "Partners".

Even though "F.N.B." was more than adequately secured and was receiving regular payments on its debt, counsel for the Bank opposed the "Debtor" at every stage of the reorganization proceedings. Counsel opposed the "Debtor's" applications for extention of time within which to file a Plan of Reorganization. Counsel ran the fee clock on objections to the allowance of Creditors' Committees' fees and expenses, on objections to Debtor's Disclosure Statement even though on confirmation of the Debtor's Plan of Arrangement, F.N.B. was owed a mere $170,000.00.

█ A creditor in a bankruptcy proceeding may recover only counsel fees and expenses attributed directly and necessarily in the process of collecting the obligation pursuant to the collection paragraph in the loan agreement between the "Debtor" and the "Bank".

█ In the opinion of the court, more than one half of the attorney time was expended on matters unrelated and unnecessary to protect and enforce the "Debtor's" obligation to "F.N.B."

█ With due deference to Sec. 330(a)(1) of the Bankruptcy Code as to the measure of counsel fees to be allowed, the economic spirit of the Bankruptcy Code would seem to require that fees of attorneys be at the low end of the spectrum of reasonableness in order to aid and encourage the viable reorganization of sick businesses and debts for excessive fee awards should be disallowed as the court has a duty to redress a despoliation of the estate by counsel for an amply secured creditor.

The fees and expenses allowed are:

Riemer & Braunstein, Esqs.
Three Center Plaza
Boston, Mass. 02108

| | |
|---|---|
| Fees requested | $19,177.00 |
| Disallowed charges | 9,177.00 |
| Amount of total allowed fees | $10,000.00 |
| Amount of expenses allowed | 3,034.24 |
| Total allowed fees and expenses | $13,034.24 |

█ Craig and Macauley, Esqs. of Boston, Mass., counsel for State Street Bank and Trust Company ("State Street") filed a bill for services in the amount of $42,748.50 and disbursements of $1641.17 for the period March 11, 1980 through March 28, 1981 indicating 571.2 hours of services at varied hourly rates of $35.00–$100.00. In addition, "State Street" also seeks reimbursement for the fees and expenses of its local counsel, McLane, Graf, Raulerson & Middleton of Manchester, N. H. in the amount of $6611.50 and expenses of $130.80 or a total of $49,360.00 as requested legal fees and $1771.97 as expenses which in all equal $51,137.97.

As in the case of "FNB", "State Street" is entitled to reimbursement of fees and expenses confined to the agreements between "State Street" and the "Debtor" and only for attorneys' fees which were incurred directly and necessarily in the process of collecting the instrument which incorporates the collection provisions for recovery of such fees and expenses.

"State Street's" original claim was settled for $409,360.73 which equalled the amount of cash held by "State Street" in the "Debtor's" account at the beginning of these proceedings. "State Street's" original claim was subordinated to the claim of "FNB" which exceeded $150,000.00. The machinery, equipment, furniture, computers and inventory of the "Debtor" which secured both "Banks" did not exceed $450,000.00 and therefore "State Street's" collateral which secured its note did not exceed in value the amount of "State Street's" original claim and therefore, "State Street" was, as contended by the "Debtor" "at best, only partially secured and is not entitled to dollar for dollar reimbursement of its fees and expenses."

A review of the Statement of Time and Disbursements of Craig and Macauley indicates that services unrelated to the collection of "State Street's" note, for instance description of services of John C. Craig, Esq. on 3/20/80—miscellaneous; 3/24/80—various matters; 5/12/80 and 5/13/80—various matters; 5/21/80—various matters, etc.; 5/28/80—miscellaneous; 6/2/80—various matters; 6/6/80—6/16/80 and 7/18/80—miscellaneous matters; 12/5/80—1/7/81 — 1/13/81 — 1/16/81 — 1/21/81 — 3/3/81—various matters and miscellaneous and a number of telephone calls and other conferences, as pointed out by the "Debtor", between counsel and co-counsel and "State Street" on undisclosed subjects on 21 occasions between May 5, 1980 and February 4, 1981. The above listed entries and others of the same nature amount to more than one-third of the billing when you add such non-collection related services as "review of disclosure statement, etc." on 1/27/81—1/28/81—1/29/81 and 10/21/80 "Draft opposition to further extension of time." The "Debtor's" comment as to the services of McLane, Graf, Raulerson and Middleton ("McLane") as vague and unrelated to the collection process of "State Street's" note are well taken.

The fees and expenses allowed are:

Craig & Macaulley, Esqs.
175 Federal St., Boston, Mass.

and
McLane, Graf, Raulerson & Middleton
40 Stark St., Manchester, N. H.

| | |
|---|---|
| Fees requested | $49,360.00 |
| Disallowed charges | 19,360.00 |
| Amount of total fees allowed | $30,000.00 |
| Amount of expenses allowed | 1,771.97 |
| Total allowed fees and expenses | $31,771.97 |