In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.

Bankruptcy No. 88–00043.

United States Bankruptcy Court, D. New Hampshire.

April 22, 1988.

Richard B. Levin, Stutman, Treister & Glatt, P.C., Boston, Mass., R. Carl Anderson, Sulloway, Hollis & Soden, Concord, N.H., for debtor.

Richard N. Tilton, Whitman & Ransom, New York City, for the Equity Sec. Committee.

Jim Cienki, Joel Zweibel, Burton S. Weston, Kramer, Levin, Nessen, Kamin and Frankel, New York City, Richard Gagliuso, J. Michael Deasy, Deasy & Dwyer, Nashua, N.H., for Unsecured Creditor's Committee.

Virginia A. Greiman, Boston, Mass., U.S. Trustee.

## ORDER APPROVING EMPLOYMENT OF GENERAL COUNSEL FOR DEBTOR–IN–POSSESSION

JAMES E. YACOS, Bankruptcy Judge.

This case has been pending before the court on the application of the debtor-in-possession to retain Stutman, Treister & Glatt, Esquires, of Los Angeles, California, as their general counsel in these chapter 11 reorganization proceedings. This case was filed on January 28, 1988 and involves a major electrical service utility company.

The court has previously appointed various special counsel to the debtor in these proceedings, covering various aspects of its operations, including special counsel relating to the debtor's ownership interest in the Seabrook nuclear plant which is completed but awaits licensing and start-up approval by the appropriate state and federal regulatory agencies.

At the filing on January 28, 1988 the debtor requested appointment of Ropes & Gray, Esquires, of Boston, Massachusetts as their general reorganization counsel. That request raised substantial questions of conflict of interest, inasmuch as Ropes & Gray also represented the joint owners involved in the Seabrook plant and the debtor-in-possession necessarily had to consider as an option in formulating a plan in this case possible action with regard to the Seabrook plant that might not coincide with desires and interests of the other joint owners. Ropes & Gray was given the option to either drop the representation of the joint owners, to eliminate any question of conflict and disinterestedness, or to withdraw as general reorganization counsel to the debtor. Ropes & Gray elected to retain the joint owners representation and the debtor on February 25, 1988 filed the present application to retain Stutman, Treister & Glatt as general reorganization counsel.

Because of the unusual nature of this retention application, i.e., requesting general counsel for a case in New Hampshire from Los Angeles, the court has held several hearings on this application and has required briefing by the debtor, the official creditors committee, and the United States Trustee on the matter. The final hearing was held on April 8, 1988 and the court announced at the conclusion of that hearing that it would appoint Stutman, Treister & Glatt as general reorganization counsel —but upon a simple "general retainer" order and not upon the detailed retainer agreement entered into by the debtor and the law firm. This order effectuates that orally-announced decision at the conclusion of said hearing.

No party in interest has suggested that Stutman, Treister & Glatt is not qualified and competent to handle a complex reorganization proceeding under chapter 11 as is involved in the case before the court. Likewise, no party in interest has suggested that the law firm has any conflict of interest or other relationships which would preclude its being deemed disinterested pursuant to § 327 of the Bankruptcy Code. From my own review of the record, and the pertinent application and supporting documents, I find that the law firm is fully competent to handle this reorganization proceeding and is disinterested within the meaning of the pertinent bankruptcy reorganization requirements.

The real question is whether it is necessary and appropriate in this proceeding to retain counsel not only from another state but from such a great distance from the

forum court. The requested retention obviously will require additional administrative costs by way of travel expense, and local office and living accommodations, which would not need to be incurred by this estate if local counsel were appointed. Stutman, Treister & Glatt and the debtor have expressly requested not only reimbursement of travel and living expenses while away from Los Angeles, but have requested that the law firm be provided office facilities in Boston and rental of living accommodations for two attorneys in Boston for the duration of this case.[1]

The imposition of such additional administrative expenses upon this estate is a serious concern of the court. However, based upon the record presented to me at the hearings on this application, I must conclude that no law firm presently is available in either New Hampshire or in Boston with the requisite experience and ability to handle a reorganization of this nature which is not already either involved in the case on the behalf of other parties or is not in a conflict situation preventing the firm from acting as general reorganization counsel to the debtor.

That factual finding by itself does not of course resolve the matter before the court. The question naturally arises as to whether competent counsel from New York City or other urban areas closer to New Hampshire might not be engaged for this purpose to avoid unnecessary administrative expense to the estate.

At the hearing on April 8, 1988, attorney Richard Levin of Stutman, Treister & Glatt, the lead attorney who will reside in this area and handle the debtor's representation, presented detailed cost comparisons which are persuasive to the court, at least at this stage of the proceedings, that retention of New York counsel would not substantially reduce the amount of administrative expense involved. This conclusion follows from a further factual finding that I made during the course of the hearing, to the effect that whatever non-forum law firm was retained to represent the debtor as general counsel would have to establish a local presence in Boston, where most of the debtor's financial people and transactions are handled, on a week-long basis and often covering weekends as well.[2]

If New York counsel were to be retained to represent the debtor, the record presently before me establishes that whether such counsel made daily trips to this area, or had hotel accommodations during the week, the total administrative costs apart from attorneys' fees would not be substantially lower than retention of Stutman, Treister & Glatt. This follows from the representation to this court by Mr. Levin that there will be no routine travel back and forth from Boston to Los Angeles, by the attorneys directly involved in this case, once they are relocated and settled into the temporary living accommodations provided to them by the debtor in Boston. It has also been represented that routine personal living expenses and rental accommodations in Boston will be terminated and offset shortly by the rental income received by the Stutman, Treister attorneys from the leasing out of their own residences in the Los Angeles area during the duration of this case.

On that basis, and taking into account the principle that a debtor normally should be permitted to retain counsel of its choice for a reorganization proceeding, *see, e.g., In re Heck's*, 83 B.R. 410 (S.D.W.Va.1988), I find and conclude that any additional

---

1. This provoked the court initially to question whether a "national" law firm charging "national" rates should not also have a "national" presence without aid from the "local" client. However, I recede from that provocative inquiry since, as stated at the April 22nd hearing, the whole focus and use of the "national" language is misleading or at least of no real utility in addressing the problem at hand. The issue is simply "high rates" of non-forum counsel versus "low rates" in the forum court. [See discussion, *infra*]

2. The court has been exerting considerable pressure upon the debtor to move forward in a expeditious matter in formulation of its plan of reorganization and a weekend of work has not been unknown in this case to date.

administrative expense that may be incurred by retention of Los Angeles counsel in this case does not appear to be substantial and is justified on the particular facts of this case. As indicated at the close of the hearing, I will retain the option of reviewing this factual conclusion as the case progresses, and as this court is presented with periodic accountings and reimbursement requests, and may modify this order accordingly if the facts as they develop so warrant.[3]

■ The foregoing comments relate primarily to questions of reimbursement of out-of-pocket expenses by the law firm. A separate question was raised during the course of the hearings as to whether "local rates" would be used in determining the base fee in the ultimate fee award determinations of this court, or whether Stutman, Treister & Glatt's regular hourly rates in its general bankruptcy practice would be employed for that purpose.

After reviewing the record on this matter, and having found that no New Hampshire law firm is available for retention as general counsel to the debtor-in-possession, I conclude and agree with the position of the debtor that local rates, which are considerably lower than Stutman, Treister's

Los Angeles rates, need not be employed as a limiting factor in determining the base fee in conjunction with determination of final fee awards in this case. Cf. *In re Frontier Airlines, Inc.,* 74 B.R. 973 (Bankr.Colorado 1987); *Matter of Baldwin United Corporation,* 36 B.R. 401 (Bankr.S. D.Ohio, 1984); *In re Atlas Automation, Inc.,* 27 B.R. 820 (Bankr.E.D.Mich.1983). I also agree with the debtor's contention that their proposed attorneys are entitled to have that determination made "up front" before they provide substantial services in this case. In that regard, I agree with the approach adopted by Judge Newsome in his decision in *Matter of Baldwin United Corporation,* supra, 36 B.R. at 401.[4]

While I have agreed that the debtor's proposed counsel are entitled to know at the beginning whether the court will limit them to local rates, I do not believe the court is or should be obliged at the outset of the case to make detailed determinations as to all aspects of the retention of general counsel to a debtor in possession in a reorganization case. It is for that reason that I have refused to specifically approve or disapprove the extensive and detailed retainer agreement referred to in the application for retention of Stutman, Treister & Glatt. As indicated above, I am approving their reten-

---

3. The debtor-in-possession is directed to provide a detailed accounting of all such Boston office and living accommodation expenses for Stutman, Treister & Glatt, from the date of their initial appearance in this case, to a date as close as possible to the date of the first interim fee and expense reimbursement applications to be filed in this case. This modifies the oral direction that I gave at the hearing that such accounting be filed within 20 days of my order, inasmuch as the first interim period is approaching shortly. It should also be noted for the record that the debtor and the law firm have requested that the Boston office and living expenses be reimbursed directly by the debtor to the providers of such services rather than being advanced by the law firm with subsequent reimbursement on application to the court. While I would not normally authorize such procedure in a case in this court, I do so authorize that procedure in this case, inasmuch as Stutman, Treister & Glatt is in a unique situation in this proceeding. Said law firm came into the case "mid-stream" without any retainer from the debtor. Normally, general counsel to a debtor-

in-possession in a reorganization case of this magnitude would have obtained a sizable retainer before the filing of a case. In those circumstances, as an equitable consideration, I do authorize the direct payments by the debtor as requested, subject to a full accounting and review by the court and other parties in interest at the periodic interim fee hearings.

4. As announced during the course of the April 8, 1988 hearing this court is receding from the statement included in the decision in *Matter of R.C. Sanders Technology Systems, Inc.,* 21 B.R. 40, 43 (Bankr.N.H.1982), to the effect that the fees in bankruptcy cases are to be "at the lower end of the spectrum of reasonableness." That position I believe is no longer tenable after the enactment of the new Bankruptcy Code in 1978 which includes in § 330 thereof a reference to "cost of comparable services" as a factor for fee award purposes. I do *not* recede from Judge Betley's statement in the beginning portion of the sentence quoted to the effect that "bankruptcy estates are to be administered as economically as possible...."

tion solely on a general retainer basis, and not on an hourly basis or a contingent fee basis, under the provisions of § 327(a) and the "retainer" reference in § 328(a) of the Bankruptcy Code.[5]

In particular, this order approving retention of general counsel should not be construed as determining that the listing in paragraph 4 of the Amended Retainer Agreement of reasonable fee factors are binding upon the court in its ultimate determination of a reasonable fee to be fixed for the services of counsel in this case. The factors pertinent to a reasonable fee award will be determined under applicable provisions of the Bankruptcy Code and Bankruptcy Rules, as said provisions, or any analogous "reasonable fee" federal statutes, have been interpreted by applicable case decisions in the Supreme Court and in this Circuit.

The terms and conditions of retainer of counsel in a bankruptcy case under a "general retainer" order are sufficiently established by pertinent case law and, in my view, the court should not be deflected from more important matters at the outset of a reorganization case by a request in effect for a detailed and premature "declaratory judgment" as to all aspects of how counsel may be compensated as the case ultimately develops. This court has expressed itself in some detail as to the application of the "lode-star" fee award approach employed in this Circuit in its decision in *In Re Elmendorf Board Corp,* 57 B.R. 580 (Bankr.N.H.1986).[6]

■ Finally, a great deal of commotion occurred in the hearings on the pending application inasmuch as Stutman, Treister and Glatt's hourly rates, i.e., ranging from $80.00 to $375.00, are considerably in excess of local New Hampshire attorney hourly rates. Visions of untold millions of dollars of legal expense at such rates permeated the discussion to some extent. Such visions stem from a misconception as to how the loadstar fee approach is employed in this Circuit. Regular hourly rates of appointed counsel simply form the "starting point" from which a fee determination is made. The ultimate standard always is whether the final fee award is in fact an award of a "reasonable fee" in the circumstances of the particular case, i.e., reasonable hourly rates applied to reasonable hours expended in rendering necessary services as further adjusted upward or downward by various recognized factors. *In Re Elmendorf Board Corp.,* 57 B.R. at 584–585.

The regular hourly rates simply do not become *ipso facto* final fee awards in this court. Retention of attorneys at high hourly rates is based not only upon the assumption that attorneys billing at such rates have the necessary experience and competence to handle complex matters, but also upon the further assumption that attorneys billing at such high rates can normally perform their duties in fewer hours than less experienced attorneys who may bill at a lower rate.[7] If that does not prove true with regard to the providing of particular services in this case, the court will not feel compelled at the time of final fee awards to allow the full hourly rate for any such services. This is not to say that the court intends to employ a liberal dose of

---

5. Such retention will relate back to the first provision of legal services to the debtor-in-possession by said law firm under this court's Interim Order Regarding Attorneys' Services dated February 29, 1988.

6. See also "Order on Final Fee Awards" entered December 17, 1987 in *In Re Bedford Computer Corporation,* 86 B.R. 6 (Bankr.N.H.1987) awarding final fees and also dealing with the question of administrative expenses in a retention involving out-of-state counsel.

7. True economy of administration in a reorganization case must be determined not by hourly rates *per se* but rather by the overall "bottom line", i.e., the total hours expended to hopefully accomplish a successful reorganization. If experienced attorneys can accomplish that task at high rates in one year, whereas less experienced attorneys at lower rates may take five years to do the job, the *total cost* to the estate in terms of *total dollars* will normally be lower in the first instance notwithstanding the higher hourly rates.

**12**

"hindsight" at the conclusion of the case, or to "second-guess" actions and decisions undertaken by attorneys in good faith as the situation appeared to them at the time such actions or decisions were necessary. Cf. *B & M Railroad Corporation v. Moore*, 776 F.2d 2, 8, 10, 54 B.R. [41], [47], [49] (1st Cir.1985).

The court is well aware of the uncertain world of fact and law in which the reorganization lawyer must dwell under the pressures of time and expense in moving forward with the formulation of a reorganization plan. It is a shadowy realm of incomplete facts and unformed legal issues that must be mastered quickly under manifold time pressures. What seems crystal clear and simple in hindsight when the reorganization is accomplished is seldom presented as such in the heat of battle. However, in the last analysis, final fee awards necessarily must take into account all the circumstances of a particular case, and the results of the services provided as can only be evaluated at the conclusion of the proceeding. Billed hours are an important factor in that determination but are not by themselves controlling in the ultimate determination of "reasonable" compensation pursuant to the statute.

Wherefore, in accordance with the foregoing, it is

ORDERED that the law firm of Stutman, Treister & Glatt of Los Angeles, California is hereby approved for employment as general counsel to the debtor-in-possession in this chapter 11 proceeding under a general retainer.