**In re BRANIFF, INC., Debtor.**

**Bankruptcy No. 89–03325–BKC–6C1.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

July 12, 1990.

Howard T. Glassman, Joel Shapiro, Blank, Rome, Cominsky & McCauley, Philadelphia, Pa., for debtor, Braniff, Inc.

Leon C. Marcus, Marc Richards, Harry Lewis, Richard Levy, Milgrim, Thomajan & Lee, New York City, for Unsecured Creditors Committee.

David M. Levine, McDermott, Will & Emery, Miami, Fla., for Noteholders Committee.

ORDER ON SEVERAL PENDING APPLICATIONS RELATING TO PROFESSIONALS' FEES AND SUPPLEMENTING PROFESSIONALS' INTERIM FEE APPLICATION PROCEDURES

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

THIS CAUSE came on for hearing on February 22, 1990, of several motions and applications relating to professionals' fee

applications. It also came on for ex parte consideration of other motions and applications related to that subject. Contemporaneously, the court has entered an order scheduling a hearing on disclosure statement, scheduling a hearing on professionals' interim fee applications, and establishing procedures to be employed in connection with those hearings (Document No. 1221). This order, among other things, supplements the procedures to be employed in the filing and hearing of professionals' fee applications as contained in the contemporaneous order.

### Interim Fee Application Procedures

In the early days of this Chapter 11 case, the debtor operated scheduled airline service. Even after it ceased its scheduled operations, the debtor continued to fly certain charter flights, and there was some reasonable basis to believe that the debtor would resume scheduled operations. During that time, the debtor and the official committee of unsecured creditors filed a joint application to establish guidelines and procedures for the payment of interim compensation to professionals (Document No. 414). Likewise, the law firm of Fisher & Phillips filed a motion for leave to file applications for interim compensation on a monthly basis (Document No. 342). By the time those motions were ready for systematic disposition, however, the debtor had ceased operations and there was real concern that the estate would be able to pay more than a small percentage of its administrative expenses. The debtor then had nothing with which to pay professionals on an interim basis. Accordingly, there was then no need to take up the motions that sought to establish regular procedures for interim compensation.

Since then, however, the situation has changed dramatically, and the debtor has now filed a proposed disclosure statement and plan. Although the plan as proposed by the debtor is a liquidating plan, the sale of the rights relating to the Airbus A–320 aircraft, among other sales, has established a substantial fund out of which administrative claims can be paid and, hopefully, a distribution to unsecured creditors can also be made. The debtor is also pursuing other avenues to recover additional funds for the estate. In short, there are monies now available for the payment of professionals, and the court deems it appropriate to establish a procedure by which professionals can make their applications for interim awards, have them heard, and receive some payment.

On the other hand, the court deems it inappropriate to authorize the debtor to make payments to professionals on a monthly or other periodic basis without direct, preapproval of the amounts by the court. Were the debtor continuing its operations, it might very well be appropriate for the court to adopt the kind of automatic and self-executing procedures suggested by the debtor and the official committee of unsecured creditors in their original application. In the liquidation mode in which the case is now resting, however, the court deems it preferable simply to invite the making of interim fee applications, hear them, and authorize the payment of at least a portion of the fees and costs that are approved. In another three or six months time and periodically thereafter, as may then be appropriate, the court can repeat the process with additional interim fee application cycles. In this way, the court can better maintain control of the administrative expenses incurred by professionals and be fair to both the professionals and the other interested parties.

For these reasons, the court has entered the contemporaneous order scheduling a timetable for the filing of interim fee applications in the first interim fee application cycle, the filing of objections, and the setting of a hearing. No applications for interim compensation shall be filed by any professional except pursuant to the procedures and schedule set forth here and in the contemporaneous order or in such further orders as the court may enter. Of course, no professional is required to file an interim fee application now. Each professional can participate in all or some of the interim fee application cycles, as he so chooses. No professional will be prejudiced by passing one or more cycle.

Accordingly, the joint motion to establish guidelines and procedures (Document No. 414) and the Fisher & Phillips motion for leave to file applications on a monthly basis (Document No. 342) are denied except to the extent specifically set forth here and in the contemporaneous order.

### Fee Application Requirements

■ Any person filing an interim (or final) fee application shall prepare the application in conformity with the following requirements:

a. The application shall recite the date of the order approving the applicant's employment and summarize the purpose and the terms of the employment as approved by the court.

b. The application shall describe any retainer received before filing the petition and describe any other compensation or consideration received by the applicant. The application shall further recite the history and amounts of any prior interim awards. The application shall also reflect how the prepetition retainer or other consideration or compensation has been applied against the amounts sought or previously authorized. The title of the application shall reflect that it is the first interim application, the second interim application, and so forth, or the final application, as the case may be.

c. The application shall set forth in clear, tabular form a summary of the time spent by professionals, including the identities of the professionals performing services for which compensation is sought, the hourly rates of each, the total time of each contained in the application, and an extension into dollars of the dollar value of each person's time. Four columns listing name, rate, time, and extension, with totals at the bottom of the second, third and fourth columns can neatly present in summary form the total being sought.

d. The application shall also contain a narrative description of the services performed and the results obtained by the applicant. In the event more than one kind of service or task was provided or performed, the narrative should be organized, subdivided, or broken down so that it describes each kind of service or task separately. At the end of the narrative for each of the services or tasks, a table of the sort described in subparagraph c above should be set forth clearly summarizing the persons, rates, time, and extensions applicable to that portion of the total service. For example, if counsel defended three motions to lift the stay, prosecuted a preference adversary proceeding, negotiated a sale of the estate's major property, and drafted and negotiated a plan of reorganization, a succinct narrative description of each of those tasks, the services performed by the debtor, and the results obtained should be provided, together with the tabular summary of the persons, time, rates, and extension information making up each portion of the whole. The tabular summary for each service or task should follow the narrative description for that service or task before presenting the narrative of the next service or task. To the extent it is impossible or impractical to break down with precision the time spent on each service or task so it can be set forth in the tabular summary form, the applicant should nevertheless do his best to estimate the information, identifying it as the applicant's best estimate.

e. The application shall contain a brief professional biographical description of the individual professionals who performed the work, including their longevity at the bar, experience, professional achievements, and the like.

f. The application shall attach the applicable computer prepared or other time entries that back up the tabular and narrative information set forth in the application itself. The time logs should reflect the recording of time in tenth of an hour increments, unless the court has previously approved a larger unit of time keeping. The court expects that all professionals record their time honestly and accurately. There shall be no "unit billing" or minimum time entries.

g. Expenses for which reimbursement is sought shall also be set forth in the application. The expenses shall be set

forth first in summary tabular form by category and amount. To the extent possible, the totals should be further broken down for each of the separate task areas that are separately described in the narrative as required in subparagraph d above. Travel expenses shall be set forth for each separate trip, broken down by their component parts (air fare, lodging, meals, ground transportation, and the like). The purpose of each trip should be set forth (for example, "to attend meeting of creditors committee in Miami on 11/1/89"). The length of each trip should also be set forth (for example, "day trip" or "overnight trip" or "2 overnights").

h. The applicant shall sign the application under oath, specifically stating that the factual statements included in the application are true and correct.

In setting forth these requirements, the court does not intend to limit the applicant in describing the bases for the award sought. Indeed, the court would expect that an applicant would go beyond these minimums in demonstrating entitlement under the applicable legal principles to the full amount sought. The point is simply that the preparation of applications in the fashion set forth here provides some degree of uniformity and simplicity that aids the court in viewing the totality of the services performed. It allows the court to see both the forest (the totality of the job done) and the individual trees making up the forest (the individual time entries recorded by the professional in performing those services). Without a narrative explanation of what was done, why it was done, and the results achieved, the mere recitation of the time spent, with time logs attached, does little to help the court apply the relevant legal criteria.

*Pending Fee Applications*

The court notes that there are five pending applications for interim compensation now on file. There is an application filed by Fisher & Phillips (Document No. 344), an application by Zuckert, Scoutt & Rasenberger (Document No. 748), an application by debtor relating to the expert witness, Lewis B. Simon (Document No. 936), an application by Polsenilli, White, Vardeman & Shatton (Document No. 1207), and an application of Breed, Abbott & Morgan (Document No. 1181).

In view of the requirements for the preparation of interim fee applications set forth in this order and in view of the contemporaneously entered order establishing a time by which the first cycle of interim fee applications can be made, objections made, and setting a hearing, it seems appropriate to deny, and the court does hereby deny, each of these pending applications without prejudice to the right of the applicants to refile them in the form set forth here by the time set forth in the contemporaneously entered order. (In the event any of these applicants believes that its pending application conforms to the procedures and requirements of the court, it may renew the application, rather than file a new one, by a simple notice of renewal filed, noticed, and served in the manner required by paragraph 3 of the contemporaneous order. The court will then treat the original application with the others to be filed in this first interim fee application cycle in accordance with the other procedures set forth in the contemporaneous order.)

*Orlando Field Office Issue*

The remaining motion for consideration is the debtor's motion to reimburse its counsel on an on-going basis for certain costs incurred by counsel (Document No. 746). Although the official committee of unsecured creditors initially filed a joinder (Document No. 822), counsel for the official committee of unsecured creditors has informed the court by letter of its desire to withdraw the joinder in view of certain statements made to the court at the hearing held on October 25, 1989, when the court initially approved the engagement of counsel for the committee (Transcript at page 13). Accordingly, the committee's joinder is deemed withdrawn.

In this remaining motion, the debtor recites that its counsel was required to open a temporary field office in the Orlando vicinity to perform properly its duties and

that the establishment of the temporary field office has resulted in the law firm incurring monthly office rent, furniture rental, office equipment and supplies expenses, telephone service, and payroll and payroll taxes for secretarial help. These expenses are itemized and come to some $6,388 per month. The motion seeks an order authorizing reimbursement for these expenses or authorizing the debtor to pay these expenses each month on a direct basis.

Although in one reported decision a bankruptcy judge has permitted payment of the type the debtor requests here, *In re Public Service Co. of New Hampshire*, 86 B.R. 7 (Bankr.D.N.H.1988), these items are typically considered purely matters of lawyer overhead, compensation for which is built into the lawyer's hourly rate. The issue presented by this motion, therefore, is whether there is anything unusual or different about this case that will permit the court to reimburse the additional overhead that the lawyer has incurred as a result of the lawyer's desire to represent a debtor in a court far away from the lawyer's office. The debtor's attorneys, of course, are a Philadelphia law firm.

In support of its motion, the debtor first urges that the court previously denied debtor's application to employ its chosen local counsel to assist its main counsel, the Philadelphia firm. Being unable to engage alternate local counsel, it is argued, counsel was then required to open its own temporary field office in Orlando.

The flaw in this argument, it seems to the court, is that it assumes an entitlement to local counsel. Although the local rules of this court contemplate that each foreign lawyer designate local counsel for very limited purposes, it is certainly not the practice of this court to authorize routinely the employment of two sets of lawyers for a debtor. Just because the debtor does not have local counsel, the debtor's lawyer is not entitled to establish a local office to be paid for by the debtor (and ultimately the creditors).

The second flaw in the argument is that it assumes that the law firm was required to set up its own office to perform services for the debtor rather than to use office space, furniture, and equipment that the debtor already had here in place in Orlando. It seems to the court that it was entirely possible that the firm could have simply taken over an office at the debtor's headquarters near the Orlando airport rather than incur the expense needed to open its own office in the downtown location. It may be somewhat more convenient to have a downtown location, but the court cannot say that the downtown location was necessary as compared to the airport location where space and equipment could have been had free of charge.

In urging reimbursement, the debtor also argues that, as a direct result of this representation, counsel's overhead has increased. No doubt this is true. But the debtor's counsel has also increased its billings and will generate increased fees as a direct result of this representation. Those additional fees will clearly permit the debtor to provide the support it needs to perform the representation—whether that support is located in Philadelphia or in Orlando.

Even the one reported decision cited in support of the debtor's request here involved a substantially different situation and was based upon several key factors not present here. In *Public Service Co. of New Hampshire, supra,* the foreign law firm's position there was "unique ... [it] came into the case 'mid-stream' without any retainer from the debtor." 86 B.R. at 10 n. 3. Here counsel received a substantial retainer at the beginning of the case. In addition, Judge Yacos made the factual finding that "no New Hampshire law firm is available for retention as general counsel to represent the [debtor]." *Id.* at 10. This court has made no such finding here and would be hard pressed to do so if asked, despite the superb job the debtor's counsel have done in this case. Moreover, the representation in that case was so substantial that lawyers actually moved from Los Angeles to Boston and rented out their California homes. *Id.* at 9. Even in the darkest days of this case, counsel commuted to

Orlando and rarely stayed for more than a few days at a time.

It therefore appears to the court that counsel have chosen to conduct this representation in a manner that has resulted in the incurring of expenses that were not necessary when viewed from the standpoint of the debtor, although the method chosen may reasonably have been more comfortable for counsel. The court neither intends nor implies criticism of counsel in making this decision. The issue is simply whether the expense incurred is separately reimbursable (or payable directly by the debtor) or is to be paid through, and included in, the lawyers' reasonable fee to be awarded by the court. As to this, the real point is that there is little about this case and these circumstances that would make it appropriate for the court to deviate from the usual rule that direct overhead expenses are not reimbursable.

For these reasons, the court hereby denies the motion as it relates to monthly secretarial payroll, payroll taxes, office rent, furniture rental, basic telephone service and equipment rental, office equipment rental, and office supplies. To the extent that individual long distance telephone calls were made in the course of this representation, their reimbursement is properly sought in counsel's fee application.

Finally, the debtor is directed to serve a copy of this order on those persons comprising the short notice list. In addition, the debtor shall serve a copy of both this order and the contemporaneous order on any professional not included in the service list following this order who has a right to file an interim fee application in the first interim fee application cycle. Counsel shall file a certificate of service after complying with the provisions of this paragraph.

DONE and ORDERED.