**In re The KITCHEN LADY, INC., Debtor.**

**Bankruptcy No. 85–00843–BKC–6C7.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Aug. 20, 1992.

■■■■■■■■■■■■■■■■■

Neil J. Buchalter, Titusville, Fla., for debtor.

William Lawless, Altamonte Springs, Fla., trustee.

Norman L. Hull, Orlando, Fla., for trustee.

## DECISION ON APPLICATIONS FOR FEES FOR TRUSTEE, FEES FOR ATTORNEY FOR THE TRUSTEE, AND FEES FOR SPECIAL COUNSEL FOR THE TRUSTEE

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

The matters before the court for consideration are: the application for allowance of attorney's fees for the attorney for the Chapter 7 trustee (Document No. 77); the application for compensation of the Chapter 7 trustee (Document No. 78); and the application for compensation of special counsel for the trustee (Document No. 75).

The file reflects that this case was filed under Chapter 11 of the Bankruptcy Code on June 24, 1985, and was converted to a case under Chapter 7 on October 25, 1985. William F. Lawless accepted the appointment as trustee for the estate on December 2, 1985. Shortly thereafter, the court also approved the retention of Mr. Lawless, the trustee, as general counsel for the trustee. Thus, the trustee and the general counsel are one and the same person.

Later, on July 8, 1987, the court entered an order authorizing the trustee to employ Norman L. Hull as special counsel for the trustee. Although he was designated "special counsel," neither the application to employ Mr. Hull nor the resulting order defined the scope of Mr. Hull's employment.

The file further reflects that the major services rendered to the trustee by professionals to marshal the assets of this estate were conducting an auction of restaurant equipment that resulted in the recovery of $275 and the filing and litigation of six adversary proceedings that resulted in the collection of $41,803.59. The assets of the estate totalled $42,078.59.

Mr. Lawless has filed an application seeking $9,600 for services rendered in his capacity as general attorney for the estate. As is customary, he has filed a separate application for compensation as trustee seeking $1,442.36 in fees and $236.22 in expenses. Mr. Hull seeks fees for his services as special counsel in the amount of $12,050 and expenses in the amount of $732.82. The total of the fees sought by these professionals is $23,092.36.

■ Although no objection has been made to any of these applications, it is fundamental that the court has an independent duty to review fee applications for reasonableness and to allow only reasonable compensation for actual, necessary services rendered by the trustee or an attorney employed by the trustee, all pursuant to Section 330(a)(1) of the Bankruptcy Code and F.R.B.P. 2016(a). *In re Cuisine Magazine, Inc.*, 61 B.R. 210 (Bankr. S.D.N.Y.1986).

This court has repeatedly published guidelines to be used in meeting the requirements for fee applications pursuant to Section 330(a) of the Bankruptcy Code and F.R.B.P. 2016(a). *In re Holub*, 129 B.R. 293, 295–98 (Bankr.M.D.Fla.1991); *In re Braniff, Inc.*, 117 B.R. 702, 705–06 (Bankr. M.D.Fla.1990); *Memorandum of Guidelines for Compensation and Expense Reimbursement of Professionals* (July 19, 1991) (distributed to the bar in the Orlando division and available in the clerk's office). These guidelines detail the information that the court routinely takes into consideration in determining the reasonableness of fees for services rendered to an estate.

### Attorney's Fee Application

■ Upon review, it is immediately apparent that the application filed by Mr. Lawless, attorney for the trustee, fails to meet the minimum informational requirements of F.R.B.P. 2016(a) and this court. First, Mr. Lawless has failed to indicate the date of the order appointing the attorney for the trustee. Although that information

can be found in the file, an order appointing the attorney is a prerequisite to the award of fees and should be included in the application.

More significantly, the application fails to include a summary of hours expended by each professional who worked on the file, the applicable hourly rates, and the total compensation requested by each professional. Instead, the application merely alleges that 64 hours of attorney time were expended and requests $9,600. Although the hourly rate is not stated in the application, the total amount requested computes to exactly $150 per hour—the maximum this court generally allows to an experienced attorney absent a showing of special circumstances or complexity in an individual case.

Neither the application nor the time records identify any person or persons who provided the professional services to the trustee. In the unlikely event that only Mr. Lawless worked on this case, the application should reflect that fact. If, as is more likely the case, a paralegal or an associate has performed some of the services that are billed to the estate, such a professional would be entitled to an hourly rate significantly less than the $150 per hour requested here. (The fee application itself was signed by an associate, not by Mr. Lawless.)

Besides failing to identify the person who has performed the service, the early entries in the time records attached to this application fail to identify the subject matter involved. For example, the December 27, 1985, entry reads as follows:

| Date | Description | Time |
| --- | --- | --- |
| 12/27/85 | receive and review letter from attorney O'Neill, attorney for Netto Construction | .3 |

The court recognizes that the time entries for the years 1985 through 1989 predate this court's guidelines for the preparation of fee applications; the court, therefore, takes this into consideration when reviewing time records from periods before the court's requirements were known. Nevertheless, from the sparse information provided, it appears that many of the entries from the date of Mr. Lawless' appointment as attorney for the trustee in December, 1985, through July, 1987, when Mr. Hull was employed, reflect services that constitute basic negotiation for recovery of assets; the initial review of the debtor's financial affairs; and technical objections to claims. Those services are clearly within the scope of the duty of the trustee as opposed to the services required of an attorney for the trustee. *Holub, supra* at 295–96.

For that reason alone, 7.9 of the hours billed between December, 1985, and July, 1987, are not compensable as attorney time. Even if additional information regarding the subject matter indicated that the services performed were in preparation for the lawsuits that followed, the time must be disallowed as duplicative of the work done by Mr. Hull as discussed below.

The file and the time records attached by both Mr. Lawless and Mr. Hull reflect the following: Mr. Lawless was appointed as attorney for the trustee on December 10, 1985. During the period from his appointment through July, 1987, Mr. Lawless either initiated or received correspondence to or from certain entities regarding estate receivables. (It is difficult to tell from the time entries whether the time item consisted of the drafting of a letter or the receipt and review of a letter sent to him.)

In July, 1987, it appears that, for some reason, Mr. Lawless chose not to pursue the recovery of those assets in his capacity as attorney for the trustee. At that time, Mr. Lawless applied for authority to employ Mr. Hull as special counsel. While neither the application nor the resulting order defined the scope of Mr. Hull's in-

tended employment, the time records of both attorneys reflect that Mr. Hull immediately assumed responsibility for the collection of those assets.

Mr. Hull promptly drafted demand letters to the same entities with whom Mr. Lawless had corresponded. Apparently unsatisfied with the results of the demand letters, Mr. Hull then filed six adversary proceedings, negotiating the settlement of some and collecting a judgment on another.

Mr. Lawless included in his application the following narrative of the legal services he performed as attorney for the trustee:

... one (1) private sale of equipment and machinery to generate funds for the estate. The applicant further negotiated four (4) Compromises of Controversy, one (1) Judgment that was collected upon and accounts receivable. All of the above were initiated by the attorney for the Trustee via the filing of adversary actions.

In fact, the substantial majority of the time entries made by Mr. Lawless from the time of Mr. Hull's employment in July, 1987, through the end of the administration of the case consisted of review of the work performed by Mr. Hull. A typical time entry from this period reads as follows:

| Date | Description | Time |
|------|-------------|------|
| 6/06/88 | receive and review copy of a complaint against RSH Construction and copy of summons filed by Mr. Hull | .7 |

■ After reviewing the time records attached to the application at issue here and Mr. Hull's time records, it appears that 28.6 hours of attorney time billed by Mr. Lawless as attorney for the trustee were duplicative of those services rendered to the estate by Mr. Hull or were merely supervision of a professional. The supervision of professionals hired by the estate is clearly a service to be performed by the trustee and is not compensable as a professional service rendered to the trustee. *In re Holub, supra* at 295.

The trustee has applied separately for his compensation as trustee for this Chapter 7 estate (Document No. 78). Mr. Hull has separately applied for fees as attorney for the trustee for these services in the amount of $12,050.00 in fees and $732.82 in costs (Document No. 75). Accordingly, the court disallows 27.8 hours from the period extending from July, 1987, through January, 1992, as duplicative of, or in supervision of, the services rendered by Mr. Hull to the estate. The court will therefore allow an attorneys fee of $4,245 and disallow the remainder requested.

### Application of Trustee for Compensation

The trustee has filed an application for compensation of the trustee (Document No. 78) requesting the maximum dollar amount permitted by statute, $1,442.36, and expenses in the amount of $236.22.

■ Section 330(a) of the Bankruptcy Code provides that the court may award a trustee reasonable compensation for actual and necessary services rendered by the trustee and that the award may be based on the nature, the extent, and the value of services, among other things. Section 326(a) establishes a cap on the compensation that may be awarded the trustee. As noted above, the trustee seeks the maximum statutory allowance for the services he rendered to this estate in his capacity as trustee.

The record in this case does not reflect that the maximum allowance should be granted. Mr. Lawless accepted appointment as trustee in this Chapter 7 case on December 2, 1985. During the first two years of the administration of this estate, from December 2, 1985, through November 20, 1987, the trustee took no aggressive action to marshal the assets of the estate:

he employed himself as attorney for the estate, began a preliminary investigation regarding potential receivables, took a deposition, responded to two motions for relief from the stay, and held an auction that generated $275.

As detailed above, for over a year and a half he made no effort to collect the receivables that would constitute the major assets of the estate. Mr. Hull took prompt action after his employment and filed the adversary proceedings that would result in the recovery of the assets of the estate between November 20, 1987, and June 3, 1988.

■ Although three of those adversary proceedings were apparently settled and the attorney for the trustee filed notices of compromise of a controversy relating to those adversaries in June and July of 1988, the trustee did not file the first motion for order approving the compromise of controversy until almost three years later on June 5, 1991. Such motions and orders are required, of course, pursuant to F.R.B.P. 9019. Only after the trustee thereby obtains the authority to effect a compromise can an adversary proceeding in which he is a party be dismissed. F.R.B.P. 7041.

The only activity in this case in 1989 was that one notice of compromise was filed in July of that year. There was no activity at all on the docket in this case in 1990. In 1991, there was no activity until June 5 when the trustee began filing motions that would result in the settlement of the adversary proceedings.

In short, this case has been pending for six and a half years, three and one half years of which there has been no appreciable activity of record on the part of the trustee or the professionals who represented him. These delays are unreasonable and are unjustified under the facts reflected in this file.

If all of the administrative claims were allowed and paid in full, there would remain $17,784.44 to be distributed to creditors. The unnecessary delay has deprived creditors of the use of their funds for at least three and one half years. If those funds had been available to creditors for investment and had earned eight percent interest for the three and one half years of unnecessary delay, those funds would have earned $4,981.00 over that period of time.

In light of those facts, it is clear that the trustee has not efficiently administered this estate, and the delay has reduced the benefit he has otherwise provided to the estate. As a result, the trustee is not entitled to the maximum payment for his services provided by law in the amount of $1,442.36. The court will allow an administrative claim by the trustee in the amount of only one half the statutory maximum, or $721.18 in fees and expenses in the amount of $236.22, and deny the remainder requested.

### Special Counsel's Fee Application

■ Norman L. Hull, special counsel for the trustee, filed an application for fees in the amount of $12,050.00 and reimbursement of costs in the amount of $732.82 (Document No. 75). The narrative included in this application indicates that the services rendered included conducting litigation in an effort to collect estate receivables and negotiating and resolving construction claims in an effort to collect estate receivables. The narrative fails to explain the number and type of adversaries filed and the resulting benefit to the estate.

Further, the application fails to identify each of the professionals who performed services in this matter and to summarize the time expended by each professional, and the total dollar amount on their behalf. That information is, however, provided in the detail of the attached time records attached to the application.

The time records indicate that Mr. Hull took aggressive action on behalf of the estate from the time of his appointment in July of 1987 through the end of 1989. For the next period of a year and a half, although there were still adversary proceedings pending, there was no significant action taken by Mr. Hull on this file. The records reflect no justification for this delay in the completion of the work for the estate.

Although Mr. Hull has not described the benefit of his services to the estate, it appears that the majority of the assets of this estate were recovered as a result of the adversary proceedings filed by Mr. Hull. He and members of his firm expended 102.5 attorney hours on behalf of the trustee. The services rendered and the benefit to the estate would have justified a fee well in excess of the hourly rate requested by Mr. Hull. Conversely, the delay in the completion in the work for the estate has resulted in direct harm to the creditors, and as a result, a reduction in fees would be warranted. Based on those facts, the court finds the fees requested to be reasonable and will allow $12,050.00 in fees and reimbursement in the amount of $732.82.

This decision constitutes findings of fact and conclusions of law as required by F.R.B.P. 9014 and 7052. In accordance with F.R.B.P. 9021, the court will enter separate final orders.

DONE and ORDERED.